### MUNRO v. JETER.

1. Neither a party in possession of land under an agreement to purchase,
   nor his heirs, can claim title by adverse possession.
2. Has a Circuit Judge jurisdiction to adjudge the *right* to homestead
   when asserted before him by the widow in an action to marshal the
   assets of her deceased husband ?
3. A decree by a Circuit Judge denying to the widow and children of
   one deceased a right of homestead in land which was held by the
   deceased under a contract to purchase, is not *res judicata* preventing
   the determination of a subsequent application for homestead—the pur-
   chase money being unpaid at the date of the decree, but fully paid at
   the time of the subsequent application.
4. Homestead may be demanded in land held by an equitable title only.
   Where a party held land under an agreement to purchase, and after
   his death the purchase money was paid in full by the sale of a portion
   of the land, but no title deed was ever executed, the widow and chil-
   dren are entitled to their homestead out of the unsold remainder.
5. *Garaty & Armstrong* v. *DuBose*, (5 S. C., 493,) explained and limited.

Before ALDRICH, J., Union, June, 1884.

This was an appeal from the following decree:

"The petitioner, as widow of John Broxie Jeter, in behalf of
herself and their two minor children, has asked this court for a
writ of mandamus to require the master of this court to appoint
commissioners to assign and set apart a homestead to the peti-
tioner and her children.

"It seems that a case has been and still is pending in this court
involving, in part, the settlement of the estate of J. Broxie Jeter,
deceased, a marshalling of his assets, &c. J. Broxie Jeter held
his lands under a bond for titles, and one of the claims presented
against his estate was a balance on the note given for the pur-
chase money. The cause came on for a hearing before Judge

Wallace, who considered the question of the right of the widow and children to a homestead in the lands in question, and held that she was not entitled to a homestead. From this decree no appeal has been taken. Under this decree a part of the lands were sold. Afterwards Judge Kershaw, by consent of all the parties of record, ordered a sale of the remaining tract of land, which is the tract now claimed as homestead. Before the sale Augusta A. Jeter, in behalf of herself and children, filed her petition with the master of this county to have a homestead assigned and set apart to herself and children. The sale was had and petitioner became the purchaser thereof at the price of $800, but she has never complied. Since said sale the master has heard the petition for homestead and declined to appoint commissioners to assign it. From this decision the petitioner has appealed to this court, and in the same paper asks for the writ of mandamus above stated.

"It appears to the court that the question of Mrs. Jeter's and her children's right to a homestead in these lands of her deceased husband, was presented to Judge Wallace and passed upon by him in his decree, and J will not interfere with his decision. I regard his decree as conclusive upon this point. The appeal from this decision of the master is dismissed, and the application for a writ of mandamus refused."

*Messrs. Rion & McKissick*, for appellants.

*Messrs. Shand & Culp*, contra.

November 30, 1885.    The opinion of the court was delivered by

Mr. Justice McGowan. John Broxie Jeter died intestate in 1880, leaving a widow, Augusta A. Jeter, and two infant children, Grace and Mabel. James Munro, Esq., as clerk of the court, administered upon his estate, and instituted these proceedings for several purposes, not necessary to be mentioned now, and among them, to marshal the assets of the estate. It appeared that the estate was insolvent; that the intestate at the time of his death left his widow and children aforesaid living on

a tract of land (272 acres) for which he never had legal title, but had gone into possession under the following circumstances: the said tract of land was a part of 752 acres which William Munro, Esq., had several years before purchased for one B. A. Jeter, who had agreed to sell the same to the intestate, giving him bond for titles upon the payment of the purchase money. The intestate was let into the possession. He sold 248 acres of the land to Kate Busby Jeter for $500, and also 232 acres to his mother for $500, leaving the remainder, 272 acres, in his possession, upon which he with his family lived until his death, at which time there was still due a portion of the purchase money, $511.63.

The cause was heard by Judge Wallace, who, on October 9, 1882, rendered a decree, in which, among other things, he said: "The only point at all contested before me was the right of Mrs. Augusta A. Jeter and her children to a homestead in the land upon which they are now living; but the case of *Garaty & Armstrong* v. *DuBose* (5 *S. C.*, 493), is direct authority against this claim and binding upon me." And accordingly he ordered so much of the land sold as it was supposed would be sufficient to pay the aforesaid balance of the purchase money, and also the other debts of the intestate; but leaving out that part of the land on which stood the residence of the family.[1]   There was no appeal from this

---

[1] The order of sale was as follows:

It is therefore ordered and decreed, that the land heretofore described as having been purchased by Kate Busby Jeter be vested in her and her heirs for ever, and that the Beaver tract be vested in the infant children of James J. Jeter, deceased, to wit, Maud, Eula, Eugene, Ernest, and Virgie, and their heirs for ever; that the J. Broxie Jeter tract of 272 acres be subdivided into two tracts, as nearly equal in size as is practicable, without prejudice to the value of each subdivision as a separate tract; that the Sarah C. Jeter tract (exclusive of the Beaver tract) and that subdivision of the J. Broxie Jeter tract which does not contain the dwelling house and outbuildings, be separately sold by James Munro, Esq., as clerk of this court, or as master, as the case may be, on salesday in November next, or on some convenient salesday thereafter, upon the following terms, to wit, one-third cash, balance in equal instalments in one and two years, with interest from day of sale, to be secured by bond of the purchaser with one or more sureties and a mortgage of the property; that the costs of these proceedings be charged one-half against the proceeds of the sale of the

decree, and the portion of the land included in the order was sold and the proceeds applied in the payment of the debts. The aforesaid balance of the purchase money for the land was paid in full, but it turned out that the proceeds of this sale were not sufficient to pay the other debts of the estate, all of which were contracted since the adoption of the constitution allowing homestead.

Afterwards, as it would seem, with the consent of all the parties of record, Judge Kershaw ordered a sale of the remaining portion of the land, upon which stands the residence, in which the intestate had lived and his wife and children still live. But before the sale of this second parcel was actually made, the widow, Augusta A. Jeter, filed a petition before the master, James Munro, to have homestead in her deceased husband's estate set off to her and her children. The land, however, was offered for sale as ordered, and bid off by the widow for $800, but she declined to comply with the terms of sale. After this sale, the master formally dismissed the petition for homestead. From this refusal of the master to have homestead set off, the petitioner appealed to the Circuit Court, praying also for a writ

Sarah C. Jeter place and one-half against the proceeds of the sale of the J. Broxie Jeter place. That if the amount realized to the estate of J. Broxie Jeter from the sales above ordered be sufficient to pay its proportion of the costs and also debts due by the said estate, together with the expenses of administration, that then the remaining subdivision of the J. Broxie Jeter place, with the dwelling house and other improvements thereon, be vested in Augusta A. Jeter, Grace Jeter, and Mabel Jeter, their heirs and assigns for ever, share and share alike; but if such amount so realized be insufficient to pay such claims and demands, that the said dwelling house subdivision be then sold on salesday in November next, or on some subsequent salesday, by the same officer and upon the same terms as is above directed as to the other two tracts.  *  *  *  *

That the proceeds of the sale of the J. Broxie Jeter lands, after payment of its proportion of costs, together with the interest of said · Broxie in his mother's lands, be applied first to the payment of five hundred and eleven and 63–100 dollars, with interest from this date, balance due to Thomas B. Jeter, administrator of B. A. Jeter, or other party entitled to the same, and the remainder of the proceeds to the expenses of administration and the debts ascertained and adjudged against the estate of J. Broxie Jeter; the remainder, if any, to be paid to his widow and children, to each one-third.

[REPORTER.

of mandamus requiring the master to appoint commissioners to lay off the homestead. Judge Aldrich refused the application and dismissed the appeal, holding that the matter was *res adjudicata* by the decree of Judge Wallace, in the proceedings in the Common Pleas.

From this order the widow and children appeal to this court upon the following grounds: "I. For that his honor held that the question of the right of homestead of Augusta A. Jeter and her children was concluded by the decision of Judge Wallace, denying the right of homestead; whereas he should have held that Judge Wallace had no jurisdiction to determine the question in the proceedings before him. II. For that his honor held that the question of the right of homestead was concluded by the decision of Judge Wallace; although since the said decision the purchase money of the land, out of which homestead is claimed, has been paid off and the decedent's estate has become entitled to receive a legal title. III. Because his honor held that a widow and minor children were not entitled to homestead in a tract of land held by the deceased husband and father under a bond for titles; although the purchase money thereof has been fully paid, and the said land been in possession of such husband and father and of his widow and children for more than ten years."

Notwithstanding the numerous decisions upon the subject, it seems that new questions are constantly arising under the provisions of the constitution and laws respecting homestead.

There can be nothing in the fact that the land had been in the possession of the intestate and his family for more than ten years. The possession of the widow and children come through the intestate, who entered under an agreement to purchase, and consequently his possession was not adverse.

We do not see that the question of the right to homestead on the part of the widow and children was conclusively adjudged against them by the decree of Judge Wallace, which was rendered in an equity proceeding originally filed in the Court of Common Pleas, without any special reference to the question of homestead. That question, however, seems to have been made before the judge, who held, upon the authority of *Garaty &amp; Armstrong* v. *DuBose, supra,* that the widow and children were

not entitled to homestead, for the reason that the land was held by the intestate under a contract to purchase, which gave only an equitable title, not the subject of levy and sale. It is true the question of the right of the widow to homestead did not arise before Judge Wallace upon a regular application to have homestead laid off, in the manner prescribed by law, but in an action to marshal the assets of the estate, and for that purpose to sell land, in aid of the personal property. He had no jurisdiction as an original question made in that case to have homestead laid off; for that purpose, the law did not give him the proper machinery. But it is not necessary in this case, and we would not be willing to hold that the Court of Common Pleas, in a proceeding to marshal the assets of an insolvent estate, has not jurisdiction to decide the question simply of the right to homestead. In marshalling assets it may become necessary to decide that question.

But assuming this to be so, Judge Wallace only adjudged and could only adjudge that question, according to the facts as they then existed. At that time, the whole of the purchase money had not been paid, but afterwards it was paid; and when this proceeding was instituted on November 19, 1883, to have the homestead laid off, the question was presented under a different state of facts, and should have been determined according to the state of facts as they then existed. As was said in *Chafee & Co.* v. *Rainey* (21 *S. C.*, 11): "The real question is, does the condition of things exist under which the constitution forbids the use of the process of the courts in enforcing the collection of debts?"

It is obvious that the condition of things now is different from what it was when Judge Wallace rendered his judgment. Then the land, as to which the exemption was claimed, was held only under a contract to purchase, where a part of the purchase money was still due; now the purchase money has been fully paid. There the legal title was in the vendor under a trust first to secure the payment of the remainder of the purchase money, and then to convey to the vendee; now the only trust is to convey to the vendee or his heirs. Until the whole purchase money was paid, it could not be known with certainty whether the trust to convey would ever become operative, or whether it might not be

necessary to sell the whole of the land to satisfy the primary trust ; but now that uncertainty no longer exists, and the vendee has an absolute right to a conveyance.   It is not unlike the case of one who sets up a claim of homestead which is adjudged against him, upon the ground that he is not the head of a family, and afterwards and before a sale of the land is made, he does become the head of a family and again makes application to have homestead set off to him under this new state of facts.   We suppose there can be no doubt that the first judgment would not be held as adjudging conclusively, as a bar to his claim, based upon a wholly different condition of things.   We do not think that the right to homestead was *res adjudicata.*

The question, then, being *res integra,* were the widow and children of John Broxie Jeter entitled to homestead in the remaining tract, upon which he was living at his death, and they still live?   When the petition for homestead was filed (November 19, 1883) no part of the purchase money remained unpaid, and they could have demanded the legal title.   All the debts then existing were contracted after the constitution, and if the legal title had been executed, there can be no doubt that they would have been entitled to homestead ; and the question now is, whether the fact that such title was not executed should deprive them of homestead, upon the ground that there cannot be homestead in land held only by an equitable title.   Is this the law ? Going back to the fountain-head, we do not see anything in the constitution, or in the amendment of 1880, or in any of the acts of the legislature in pursuance thereof, which necessarily restricts the right of homestead to land in which there is legal title, or which requires, as in respect to dower, that there should be legal seizin.   The constitution makes no reference whatever to the character of the title to land in which homestead is given. Section 20 of article I. simply declares that "a reasonable amount of property as a homestead shall be exempt from seizure and sale," &c.   Section 32 of article II. declares that "the family homestead of the head of each family residing in the State, such homestead, consisting of dwelling house,   *   *   * shall be exempt from attachment, levy, or sale on any mesne or final process, issued from any court," &c.; and the phraseology

of the amendment of 1880 is that "the general assembly shall make such laws as will exempt from attachment and sale under any mesne or final process issued from any court to the head of any family residing in this State, a homestead in lands, whether held in fee or any lesser estate," &c. We fail to see in any of these provisions anything which excludes homestead in land held by an equitable title; but, on the contrary, they all seem to contemplate the exemption without regard to the title.

This court has held that the homestead provision does not undertake to deal with the estate of the debtor; that the right is neither a lien nor new estate, but a mere negation of the ordinary remedies of the creditor as to certain property for certain purposes, an "exemption," dealing merely with the means of enforcing the contract and leaving the title of the property untouched. Being a mere "exemption" from judicial process, what difference can it make whether the title to the property be legal or equitable? From the very nature of the right, the object being to secure a shelter, a home, it would seem to have reference rather to the physical state of the property itself than to the nature and quality of the title. The right, of course, must always be subject to the payment of the purchase money; but, as we understand it, that is entirely independent of the nature of the title, and is equally necessary whether the estate be legal or equitable. We do not see why there may not be homestead in lands held only by an equitable title.

This view is certainly sustained by a great preponderance of authority. Most of the States of the Union have homestead laws, which, while differing from each other in various particulars, are very much the same in their general scope. Nearly all of these States hold the doctrine that homestead is allowable in lands, held only by equitable title. Mr. Thompson lays it down as follows: "Will an equitable estate support a homestead right? This question must be answered in the affirmative. Thus an equity of redemption will support a homestead right. In such case the mortgagor, though he holds subject to the mortgage debt, holds his homestead paramount to his other creditors. * * * And so will possession under a verbal contract of purchase support the homestead right. And so will possession under an unex-

ecuted written contract of purchase," &c.    *Thomp. Homest.*,
§ 170, and notes, citing authorities from at least ten States, viz.,
Vermont, Minnesota, Iowa, Michigan, Kansas, Illinois, Wisconsin,
Texas, Mississippi, and North Carolina.    In *MacManus* v.
*Campbell* (37 *Tex.*, 267), the doctrine is stated as follows : "The
homestead rights attach whenever the property is dedicated to
that purpose.    This dedication may be made even before the fee
passes, or the whole of the purchase money is paid, subject only
to the vendor's lien"—that is, the payment of the purchase money
where the vendor's lien is not allowed.    In *Allen* v. *Hawley*
(66 *Ill.*, 173), it is stated thus : "The residence was on the west
half, and it is insisted that because Hardy only had an equitable
title to that part of the quarter section, the right of homestead
did not attach.    I do not see how the proposition assumed can be
maintained.    *    *    *    Mrs. Hardy was entitled to a home-
stead in the premises as against all the indebtedness of her hus-
band, except for the purchase money or improvements."

But it is urged that the question has been settled in this State
in the case of *Garaty & Armstrong* v. *DuBose*, 5 *S. C.*, 493. It is
true that the syllabus of that case does indicate that the question
was there made and decided.    We think, however, that a careful
examination of the case as reported will disclose the fact that it
is at least doubtful whether the exact point in question was there
made at all.    R. M. DuBose was a bachelor, who kept an estab-
lishment with furniture, employees, and hired servants on a tract
of land which he held under an unexecuted written contract to
purchase, with one-third of the purchase money still unpaid.
The sheriff, under executions against him, levied this land and
his personal property, and being ruled for not selling, he made
return "that DuBose, the defendant in execution, claimed home-
stead and exemption of the articles of personal property, and that
the defendant had no such interest in the land as that it could
be levied and sold.    The plaintiffs insisted that the defendant
was not 'the head of a family,' and therefore not entitled to home-
stead or exemption."    Really, the only two questions in the case
were, first, whether DuBose was the head of a family.    If so, he
was entitled to homestead in the personalty ; but if not, then,
second, whether he had a leviable interest in the land, and if not,

the levy was void. These were certainly the only questions argued. The court held that DuBose was not the head of a family in the sense of the constitution and laws, and therefore not entitled to homestead at all.

That was necessarily the end of the whole matter, except as to the ulterior question, whether the defendant in execution had a leviable interest in the land. Upon that question the court held that a mere equity was not leviable under execution, which was the point made; but the court went further and held the unnecessary point, which had not been argued, that because DuBose had no leviable interest in the land, therefore he would not have been entitled to homestead in it, even if he were (which he was not) the head of a family. The chief justice said : "If the claim to a homestead by the respondent, DuBose, was founded only on his interest in the land of which he is the occupant, it would be enough to say that he does not hold it by any legal title, and only to such does the homestead provision apply. The constitution (art. II., sec. 32) expressly refers to the real estate of the head of a family, subject to sale "under mesne or final process issued from any court. It presupposes a title capable of transfer by such a sale. The respondent here has no legal title to the real estate. He has but an equitable interest. It can never ripen into a legal title until the full consideration agreed to be paid has been satisfied. The constitution and the several acts of the legislature in their various provisions in regard to the homestead exemption, all look to an interest in the land, which can be transferred by a judicial sale. The mere equitable interest which the claimant holds in the real estate does not entitle him to its benefit," &c.

But if we must assume that the question was fairly before the court and decided in the case of DuBose, it does not follow that it should necessarily be conclusive of this. In this case the equitable interest has substantially "ripened into the legal title." Besides, the case of DuBose arose in connection with the enforcement of an execution, and, as appears from the judgment itself, was decided under the law as it stood before 1873. Up to that time certainly it seemed to be considered that process was an indispensable prerequisite to the assertion of the claim of home-

stead. In that view, it was easy to conclude that the questions of homestead and of having an estate leviable under execution were identical, and that there could be no homestead where there was no legal estate capable of being levied and sold under execution. But in 1873 the legislature passed an act (15 *Stat.*, 372) which gives the right to the widow and children of a deceased debtor to petition the probate judge (now master or clerk) to have homestead set off to them, "although no process has been lodged with any officer against the homestead," thus in such case disconnecting the question of the right to homestead from the enforcement of process or any inquiry as to the character of the estate. It seems to us that it is enough to entitle the parties to the exemption if a homestead has been established upon the land, and it may be attached, levied, or sold under proceedings or "process of any court" either in law or equity ; always, of course, subject to the payment of the purchase money.

The judgment of this court is that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit Court for such further proceedings as may be necessary to carry out the conclusions herein announced.